IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

| | |
|---|---|
| ANTHONY T. LEE, et al., )<br>)<br>   Plaintiffs, )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>   Plaintiff-Intervenor )<br>   and Amicus Curiae, )<br>)<br>NATIONAL EDUCATION )<br>ASSOCIATION, INC., )<br>)<br>   Plaintiff-Intervenor, )<br>)<br>   v. )<br>)<br>PHENIX CITY BOARD OF )<br>EDUCATION, et al., )<br>)<br>   Defendants. ) | CIVIL ACTION NO.<br>3:70cv854-T<br>(WO) |

OPINION

In this longstanding school desegregation case, the plaintiffs, a class of black students, obtained relief from race discrimination in the operation of a de jure segregated school system. The defendants are the Phenix City Board of Education and its members and superintendent, as well as the Alabama State Board of

Education, its members, the State Superintendent of Education, and the Governor of Alabama.  The Phenix City Board of Education and its members and superintendent have moved for a declaration of unitary status and termination of this litigation.  Based on the evidence presented, the court concludes that the motion should be granted and this litigation terminated as to the Phenix Board of Education and its members and superintendent.

## I. BACKGROUND

### A. Early Litigation and the 1998 Consent Decrees

This case began in 1963 when several black students and their parents sued the Macon County Board of Education and its superintendent seeking relief from the continued operation of a racially segregated school system. The Lee litigation, as it is known, grew to involve 35 school districts throughout the State of Alabama, and, as part of that litigation, a desegregation plan for the Phenix City Public Schools was ordered on

April 3, 1970. A full history of the <u>Lee</u> litigation is set forth in detail in <u>Lee v. Russell County Bd. of Educ.</u>, 2002 WL 360000, at *1 (M.D. Ala.) (Thompson, J.).

On February 12, 1997, this court entered an order affecting eleven school systems, stating that the court was "of the opinion that the parties should now move toward 'unitary status' ... and for the termination of the litigation [for the school systems] in these cases." On September 16, 1998, the court approved a consent decree finding the Phenix City School District had achieved unitary status in the area of transportation, and detailing those areas in which further remedial action was necessary. Courts may allow partial or incremental dismissal of a school desegregation case before full compliance has been achieved in every area of school operations; jurisdiction is retained over the remaining parts of a desegregation case. <u>Freeman v. Pitts</u>, 503 U.S. 467, 490-91, 112 S.Ct. 1430, 1445 (1992).

## B. The 2000 Consent Decree

On August 16, 1999, the Phenix City Board of Education and its members and superintendent filed a petition to amend seeking the closing of three elementary school facilities, construction of a new elementary school and the redrawing of attendance zones to accommodate the new facilities. Following negotiations, all parties agreed to the closing of the three schools, construction of two new elementary schools and the establishment of a magnet program at one of the new elementary schools. On January 24, 2000, the court entered a decree agreed upon by the parties. The closing of three schools was allowed, the construction of two new schools was approved, attendance zones were redrawn, and a magnet program component for Lakewood Elementary School was approved. The Phenix City Board of Education was ordered to submit annual reports to the court by June 30 of each year, with the first report due June 30, 2002, or at the end of the first full year of the two new schools'

operation, whichever occurred last.  These annual reports were to detail the efforts made to comply with the requirements of the 2000 consent decree until such time as the magnet-program and attendance-zone portion of the Phenix City School System might be declared unitary.

### C. The 2002 Consent Decree

During an August 2001 status conference, the parties agreed that the actions taken by the Phenix City School System over the previous three years were in compliance with the 1998 consent decree and justified termination of the case in all areas except the area of magnet-program and attendance-zone at Lakewood Elementary School.  In particular, during the course of implementing the decree, the district had developed plans of action addressing each of the areas of continued concern raised by the plaintiff parties, and the school board adopted these plans as district policies and procedures.  On October 22, 2001, the Phenix City Board of Education and its

members and superintendent filed their motion for declaration of unitary status and termination of the litigation.

On January 4, 2002, the court entered a consent granting the motion for declaration of unitary status. The Phenix City School System was declared unitary in the areas of faculty assignment and hiring, student assignment, class assignments, grouping, special education, graduation rates, inter-district transfers, discipline, extracurricular activities, and facilities. The court retained jurisdiction over the magnet-program and attendance-zone portion of the 2000 consent decree.

### D. The 2005 Motion for Declaration of Unitary Status

During a yearly status conference held on April 8, 2005, the court instructed the Phenix City Board of Education to file for unitary status on the remaining issue following the filing of the third annual report. This report was filed on June 23, 2005, and the Phenix

City Board of Education filed its motion for declaration of unitary status and termination of this litigation on August 2, 2005.  A fairness hearing was scheduled for September 28, 2005.

The court required the Phenix City Board of Education to give all plaintiff class members appropriate notice of the motion and procedures for lodging objections.  After the court approved the notice form, the Phenix City Board of Education published, in the local newspaper over a two-week time period, notice of the proposed termination of this litigation and the date of the fairness hearing.  The notice also provided procedures for class members and interested persons to file comments and objections with the court regarding the proposed unitary-status declaration and dismissal of this lawsuit.  Forms for objections and comments were made available in numerous public locations.  In addition to the published notice, copies of the unitary-status motion, future action plans, and three annual reports were made available at the local

school board offices in Phenix City. Notice forms along with forms for objections and comments were sent home with every student enrolled in the Phenix City School System. No objections were filed with the court opposing the unitary-status motion and dismissal of the case. On September 28, 2005, the court, as promised, conducted a fairness hearing.

The court concludes that the Phenix City Board of Education complied with the directives of the court in providing adequate notice of the proposed dismissal to class members as well as to the community. Fed.R.Civ.P. 23(e).

## II. DISCUSSION

### A. Standards for Termination of a School Desegregation Case

It has long been recognized that the goal of a school desegregation case is to convert promptly from a de jure segregated school system to a system without "white" schools or "black" schools, but just schools. Green v.

County School Bd. of New Kent County, Va., 391 U.S. 430, 442, 88 S.Ct. 1689, 1696 (1968). The success of this effort leads to the goal of ultimately returning control to the local school board, as "local autonomy of school districts is a vital national tradition." Freeman v. Pitts, 503 U.S. 467, 490, 112 S.Ct. 1430, 1445 (1992) (quoting Dayton Bd. of Education v. Brinkman, 433 U.S. 406, 410, 97 S.Ct. 2766, 2770 (1977)). Returning schools to the control of local authorities "at the earliest practicable date is essential to restore their true accountability in our governmental system." Id.

The ultimate inquiry concerning whether a school district operating under a school desegregation order to dismantle a de jure segregated school system should be declared unitary is whether the school district has complied in good faith with the desegregation decree, and whether the vestiges of prior de jure segregation have been eliminated to the extent practicable. NAACP, Jacksonville Branch v. Duval County Sch. Bd., 273 F.3d

9

960, 966 (11th Cir. 2001) (citing <u>Missouri v. Jenkins</u>, 515 U.S. 70, 88, 115 S.Ct. 2038, 2049 (1995), and quoting <u>Freeman v. Pitts</u>, 503 U.S. 467, 492, 112 S.Ct. 1430, 1466 (1992)); see also <u>Manning v. Sch. Bd. of Hillsborough County</u>, 244 F.3d 927, 942 (11th Cir. 2001), <u>cert. denied</u>, 534 U.S. 824, 122 S.Ct 61 (2001); <u>Lockett v. Bd. of Educ. of Muscogee County</u>, 111 F.3d 839, 843 (11th Cir. 1997).

In addition to these articulated constitutional standards, the Phenix City Board of Education was also required to comply with the contractual requirements of the 1998 consent decree which set forth the steps the board was to take to attain unitary status. <u>NAACP, Jacksonville Branch v. Duval County Schools</u>, 273 F.3d 960 (11th Cir. 2001). The parties agreed that the board would analyze and review programs and practices in each of the areas in which further actions were required. The board was to formulate and adopt procedures and practices designed specifically to address each of these areas. The

board was thus required to take specific actions to address concerns the parties argued were vestiges of the prior dual system, to ensure that the school district was being operated on a nondiscriminatory basis.

The legal standards for dismissal of a school desegregation case were set forth in the 1998 consent decree as: (1) whether the school district has fully and satisfactorily complied with the court's decrees for a reasonable period of time, (2) whether the vestiges of past discrimination have been eliminated to the extent practicable, and (3) whether the district has demonstrated a good-faith commitment to the whole of the court's decrees and to those provisions of the law and the Constitution that were the predicate for judicial intervention. Missouri v. Jenkins, 515 U.S. 70, 87-89, 115 S.Ct. 2038, 2049 (1995). By emphasizing that the good-faith component has two parts (that is, that a school district must show not only past good-faith compliance but a good-faith commitment to the future

11

operation of the school system), the parties looked both to past compliance efforts and to a good-faith commitment to the future operation of the school system through "specific policies, decisions, and courses of action that extend into the future." Dowell v. Bd. of Educ. of the Oklahoma City Public Schools, 8 F.3d 1501, 1513 (10th Cir. 1993) (citations omitted). Regardless, "[t]he measure of a desegregation plan is its effectiveness." Davis v. Bd. of Sch. Comm'rs, 402 U.S. 33, 37, 91 S.Ct. 1289, 1292 (1971).

B. September 2005 Fairness Hearing

As stated, after the Phenix City Board of Education and its members and superintendent filed their motion for declaration of unitary status and termination of this litigation, the court required publication and notice of the proposed dismissal, scheduled a fairness hearing, and established procedures for filing comments and objections; no objections were filed with the court.

12

At the fairness hearing held on September 28, 2005, the court heard testimony offered by the Phenix City Board of Education. Dr. Larry DiChiara, Superintendent of the Phenix City schools, testified about the school board's affirmative efforts to comply with the court orders. Mr. Eddie Lowe, President of the Phenix City Board of Education, testified that the board is committed to continuing its good-faith compliance strategies, as evidenced by the board's resolution dated November 29, 2001, and filed with the court on January 9, 2002.

The witnesses confirmed the information contained in the third annual report filed by the Phenix City Board of Education on June 23, 2005, stating that the population of magnet students at the Lakewood School during the 2004-2005 school year consisted of 58 % black students, 40 % white students, and 2 % other students, while the racial composition of the district as a whole was 63 % black, 35 % white, and 2 % other. Dr. DiChiara testified

that black students make up approximately 10 % of the non-magnet student population at Lakewood.

## III. CONCLUSION

On the basis of the record evidence, witness testimony, and averments of counsel, the court finds that the Phenix City Board of Education and its members and superintendent have met the standards entitling the school district to a declaration of unitary status and termination of this litigation. They have fully and satisfactorily complied with the orders of this court. The vestiges of the prior <u>de jure</u> segregated school system have been eliminated to the extent practicable. The court also finds that the school board and its members and superintendent have demonstrated a good-faith commitment to the whole of the court's decrees and to those provisions of the law and the Constitution that were the predicate for judicial intervention in this school system in the first instance through their

compliance with the court's orders over the years, through their good-faith implementation of their contractual obligations under the 1998 consent decree and through their adoption of specific policies and actions that extend into the future demonstrating their commitment to the operation of a school system in compliance with the Constitution.

The plaintiff parties have succeeded in the task they began decades ago to seek the end of the seemingly immovable de jure system of school segregation in Phenix City. This lawsuit sought to bring the school district into compliance with the constitutional requirement of equal protection under the law, and the court states today that they have succeeded. NAACP, Jacksonville Branch v. Duval County Schools, 273 F.3d 960, 976 (11th Cir. 2001). By its actions today, the court recognizes and congratulates the sustained efforts of the parties. In so doing, however, the court notes that "[t]he Board, and the people of [Phenix City] who, in the end, govern

their school system, must be aware that the door through which they leave the courthouse is not locked behind them. They will undoubtedly find that this is so if they fail to maintain the unitary system [the court] conclude[s] exists today." Id. at 976-77.

Therefore, with the judgment the court will enter today, control over the Phenix City School System will be properly returned to the Phenix City Board of Education and its members and superintendent. The motion for declaration of unitary status and termination of this litigation filed by the board and its members and superintendent will be granted, and all outstanding orders and injunctions will be dissolved and this litigation dismissed as to the board and its members and superintendent. However, the state defendants are not dismissed, and the orders dealing with the state-wide "facilities" and "special education" issues are not dissolved.

    DONE, this the 27th day of October, 2005.

                              /s/ MYRON H. THOMPSON  
                              UNITED STATES DISTRICT JUDGE